IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETTY L. SULIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-154J |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 13th day of February, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by

those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for disability insurance benefits and supplemental security income on November 8, 2001, alleging a disability onset date of January 7, 2000, due to sacroiliac joint dysfunction, continuous hip displacement and depression. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on February 21, 2003, at which plaintiff, represented by counsel, appeared and testified. On April 22, 2003, the ALJ issued a decision finding that plaintiff is not disabled. On May 8, 2004, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 34 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has a high school education and past relevant work experience as a press operator, inspector, housekeeper, daycare attendant and cashier. For purposes of plaintiff's application for Title II benefits, plaintiff met the disability insured status requirements of the Act on her alleged onset date and had acquired sufficient quarters of coverage to remain insured through December 31, 2002.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.  The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of sacroiliac joint dysfunction, a facet syndrome, a depressive disorder with anxiety and an adjustment disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of her impairments.  Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff could perform based upon her age, education, work experience and residual functional capacity.  Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§423(d)(1)(A) and

1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

Additionally, the Commissioner has promulgated regulations dealing specifically with the evaluation of mental impairments.

- 4 -

20 C.F.R. §§404.1520a and 416.920a. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432.

Here, plaintiff challenges the ALJ's findings at step 5[1] of the sequential evaluation process. Specifically, plaintiff contends that: (1) the ALJ improperly analyzed the medical evidence and failed to accord the appropriate weight to the reports of plaintiff's treating physician regarding limitations arising from her physical impairments; and, (2) the ALJ failed to proffer a hypothetical to the vocational expert accurately setting forth plaintiff's specific work related physical limitations. Upon review, the court finds that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence in assessing plaintiff's residual functional capacity.[2] Specifically, plaintiff contends that the

---

[1] At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

[2] Here, as to plaintiff's physical limitations, the ALJ found that plaintiff "has retained the residual functional capacity for light work which would include lifting and carrying

- 5 -

ALJ failed to accord the appropriate weight to the records of her treating physiatrist, Garret Dixon, M.D., who treated plaintiff from March of 2000 until October 2002. Upon review the court finds that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence to assess plaintiff's residual functional capacity. (R. 24-25). Based upon his review of the

---

up to 20 pounds, but is limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing. Additionally, [plaintiff] is limited to occasional pushing and pulling with the lower extremities to include the operation of pedals. Further, [plaintiff] must be able to sit and stand at regular intervals during a workday." (R. 28)

entire record, including plaintiff's medical records and plaintiff's own testimony and reported daily activities, the ALJ concluded that plaintiff's impairments, while severe, do not preclude her from performing any substantial gainful activity. These findings are supported by substantial evidence as outlined by the ALJ in his decision.

Plaintiff raises numerous challenges to the ALJ's evaluation of the medical evidence, none of which the court finds persuasive. First, contrary to plaintiff's assertion, Dr. Dixon's opinion that plaintiff is temporarily disabled was not entitled to controlling weight. The ALJ expressly addressed in his decision Dr. Dixon's opinion that plaintiff was temporarily disabled and explained why that opinion was not entitled to controlling weight.

Specifically, as the ALJ noted, Dr. Dixon's opinion of temporary disability, which was rendered in an employability assessment for the Department of Public Assistance, was inconsistent with both his own objective medical findings and with his own subsequent report in which he indicated that plaintiff could perform sedentary and light work with certain limitations including position changes and minimal postural manuevers. (R. 25).

Moroever, Dr. Dixon's records do not support plaintiff's contention that she must lie down with great frequency throughout the day. Although Dr. Dixon indicated in one of his reports that lying down is an acceptable way for plaintiff to manage her pain, he also instructed plaintiff to remain active because exercise was

critical to her pain control. (R. 220-22; 309). Based on the record as a whole, including medical evidence from Dr. Dixon, the ALJ concluded that plaintiff's statement that she has to lie down half of the day was exaggerated.[3]

Finally, the court finds no error in the ALJ's not having plaintiff evaluated by a consultative examiner. Pursuant to 20 C.F.R. §404.1519a(b), a consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on a claim. Here, the evidence as a whole was sufficient to support the ALJ's decision without the need for a consultative examination. Contrary to plaintiff's contention that the only medical evidence in this case was from Dr. Dixon, the record contains reports from numerous other medical sources, including Dr. McAndrew at DuBois Regional Medical Center (R. 198-99), physical therapy records from Keystone Rehabilitation Systems (R. 173-192), Dr. Maloney (R. 303-305), Dr. Newberg (R. 236-37; 243-44), and Dr. Nghia Tran (R. 275-76; 282-83). This medical evidence, as well as the non-medical evidence, was sufficient for the ALJ to render a decision on plaintiff's

---

[3] Plaintiff also contends that the ALJ improperly mischaracterized her testimony regarding her daily activities to support a finding of not disabled. The court disagrees. While it is true, as plaintiff asserts, that sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity, see Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Rather, in assessing plaintiff's credibility, the ALJ properly considered not only plaintiff's reports of her activities of daily living, but also considered plaintiff's allegations in light of the medical evidence, her treatment history and all of the other evidence of record. (R. 24).

applications without the need for an additional consultative examination.

Plaintiff's final argument is that the ALJ's hypothetical to the vocational expert did not account for all of plaintiff's limitations. Plaintiff contends that a remand is necessary in this case because the ALJ's alleged failures to properly analyze the medical evidence and plaintiff's testimony regarding her daily activities resulted in a defective hypothetical that did not accurately set forth all of plaintiff's limitations.

However, as already discussed, the court finds substantial evidence in the record to support the ALJ's evaluation of the medical evidence and plaintiff's testimony. Morever, the record as a whole supports the ALJ's residual functional capacity assessment and the hypothetical posited by the ALJ, incorporating that residual functional capacity assessment, accurately set forth all of plaintiff's limitations as supported by the objective evidence. As a hypothetical to the vocational expert must reflect all of the claimant's impairments and limitations supported by the record, Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984), and the hypothetical posited by the ALJ in this case did so, the court finds no basis to remand for additional analysis.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by

AO 72A
(Rev.8/82)

substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
    The Law Office of Karl E. Osterhout
    570 Edgewood Towne Center Offices
    1789 S. Braddock Ave.
    Pittsburgh, PA 15218

   John J. Valkovci, Jr.
   Assistant U.S. Attorney
   319 Washington Street
   Room 224, Penn Traffic Building
   Johnstown, PA 15901

AO 72A
(Rev.8/82)